**SIERRA CLUB et al., Plaintiffs,**

v.

**William T. COLEMAN, Jr., and Norbert T. Tiemann, Defendants.**

**Civ. A. No. 75–1040.**

United States District Court,
District of Columbia.

Oct. 17, 1975.

**54**

Leonard Meeker, Washington, D. C., Eldon Greenberg, Richard A. Frank, Co-Counsels, Washington, D. C., for plaintiffs.

Irwin Schroeder, U. S. Dept. of Justice, Washington, D. C., for defendants.

## MEMORANDUM AND ORDER

BRYANT, District Judge.

This matter is before the Court, pursuant to Rule 65 of the Federal Rules of Civil Procedure, on plaintiffs' Motion For A Preliminary Injunction. Having considered the papers submitted in support thereof, the opposition thereto, and the arguments of counsel, the Court makes the following findings of fact and conclusions of law.

This case arises under the National Environmental Policy Act (NEPA), 42 U.S.C. § 4321 et seq. The defendants, the Department of Transportation and the Federal Highway Administration, are currently engaged in the initial steps of construction of the "Darien Gap Highway" through Panama and Colombia.[1] Construction of a highway to link the Pan American Highway system of South America with the Inter-American Highway was authorized by Congress in 1970, P.L. 91–605, 23 U.S.C. § 216. The actual administration of the project was left to the Secretary of Transportation, 23 U.S.C. § 216(b). In April of 1974, well after the project was underway and well after the selection of the precise route of the highway had been made, the Federal Highway Administration (FHWA) prepared and circulated to certain parties a draft "Environmental Impact Assessment" relating to the construction of the highway. In December of 1974 FHWA issued a final "Assessment", very similar to the draft. The Sierra Club and three other environmental organizations have now brought this action seeking to enjoin any further action on the project by FHWA, claiming that the preparation and issuance of the "Assessment" satisfied neither the procedural nor the substantive requirements of NEPA. For the reasons outlined below, the Court agrees, and is compelled to grant the preliminary injunction.

A number of courts have previously considered the requirements for a preliminary injunction in the case of an alleged deficiency in compliance with NEPA requirements. This Court agrees that "when . . . federal statutes have been violated, it has been the long-standing rule that a court should not inquire into the traditional requirements for equitable relief." *Atchison, Topeka, and Santa Fe Railway Co. v. Callaway,* 382 F.Supp. 610, 623 (D.D.C., 1974). Accord, *Lathan v. Volpe,* 455 F.2d 1111, 1116 (9th Cir., 1971); *Keith v. Volpe,* 352 F.Supp. 1324, 1349 (C.D.Cal., 1972), aff'd., 506 F.2d 696 (9th Cir., 1974), cert. denied, 420 U.S. 908, 95 S.Ct. 826, 42 L.Ed.2d 837 (1975). In each of these NEPA cases the court took the position that it was not necessary to the granting of a preliminary injunction to balance the equities, and approved the issuance of an injunction based on deficiencies in compliance with NEPA requirements. These cases derive from the decision of the Supreme Court in *United States v. City and County of San Francisco,* 310 U.S. 16, 60 S.Ct. 749, 84 L.Ed.2d 1050 (1940), reh. denied 310 U.S. 657, 60 S.Ct. 1071, 84 L.Ed. 1420 (1940), in which

---

1. Those two countries together bear one-third of the cost of the road; the United States bears two-thirds.

the Supreme Court approved the granting of an injunction without a balancing of the equities in order to give effect to a declared policy of Congress, embodied in legislation.

█ In the present case, the Court finds three principal deficiencies in FHWA's compliance with the NEPA requirements. First, FHWA failed to circulate either its draft or final Assessment to the Environmental Protection Agency for its comments, as required by 42 U.S.C. §§ 1856h-7 and 4332(C). There is no question but that the environmental effect of major highway construction is within the expertise of EPA, and that agency might well have had valuable comments which could have affected FHWA's judgment as the Assessment was considered in the decision-making process in the selection of the highway's route. Indeed, EPA's response to the Assessment (when it finally learned of its existence) suggests a discussion by FHWA of the domestic consequences of the transmission of aftosa into the United States, the lack of which is one of the very deficiencies found by this Court (below) to require the granting of an injunction.[2]

The second major defect in the "Assessment" is a substantive one: the failure of that document to adequately discuss the problems of the transmission of aftosa, or "foot-and-mouth" disease. While there is in the document a recognition of the probable transmission of aftosa absent the most stringent of control programs, and a consequent discussion of the evolving plans for preventing transmission of the disease to North America, there is no discussion whatsoever of the environmental impact upon the United States of a breakdown of such a control program. Considering that, according to the undisputed record in this case, aftosa is the most serious existing livestock disease, which if it spread into the United States could result in the destruction of up to twenty-fice percent of North American livestock and an economic loss of ten billion dollars, as well as the extinction of such endangered species as the American bison, it seems evident that an impact statement which fails to discuss this possibility is fatally deficient. No matter how well-planned the control program may be, there will always remain at least the possibility that it may not prove successful. Discussion of the consequences of failure is therefore essential, for otherwise the public, and particularly those most interested in such a possibility, will not be alerted to the problem and will not make the informed comments which FHWA is required to consider in its decision-making process.[3]

The third defect in the Assessment, again of a substantive nature, is its failure to adequately discuss possible alternatives to the route that has been chosen for the highway, as required by § 102(2)(C)(iii) of NEPA, 42 U.S.C. § 4332(C)(iii). While the statement does mention briefly the "no-build" alternative, without discussing its relative environmental impact, the bulk of the section of the final Assessment dealing with "Alternatives To The Proposed Project" is devoted to an analysis of why the short ("Atrato") route is preferable to the longer ("Choco") route from the point of view of engineering and cost. Unfortunately, none of the discussion therein is addressed to the environmental impact of possible alternatives to the route actually selected (the Atrato route).[4] While, in light of the express Congressional mandate that a *highway* be built, it seems unnecessary for the statement to discuss possible non-land

2. See Appendix J to plaintiffs' Memorandum of Points and Authorities in Support of Plaintiffs' Motion for a Preliminary Injunction.

3. See also Appendix E to plaintiffs' Memorandum of Points and Authorities in Support

of Plaintiffs' Motion for a Preliminary Injunction.

4. Exhibit A to defendants' Memorandum in Opposition to Motion For Preliminary Injunction, pp. 182–187.

alternatives, it is indispensable for the statement to discuss at least the relative environmental impacts of other land routes, such as the Choco route, though they might cost more or be less feasible from an engineering perspective. Such a discussion of the environmental impact of alternate routes will also allow FHWA to discuss more fully the impact of the road upon the lives of the Choco and Cuna Indians, and the opportunities which alternate routes may present for avoiding the "cultural extinction" so casually predicted by the Assessment for those tribes as a result of the Atrato route.[5]

Finally, the defendants in their opposition to plaintiffs' motion make no claim that an environmental impact statement is not required, but rather contend that their document is the functional equivalent of an environmental impact statement as defined by NEPA. While it is unimportant whether this document is labelled "Statement" or "Assessment", the document in question is clearly not what NEPA demands. The law in this jurisdiction is clear: "... the Section 102 duties are not inherently flexible. They must be complied with to the fullest extent, unless there is a clear conflict of *statutory* authority. Considerations of administrative difficulty, delay or economic cost will not suffice to strip the section of its fundamental importance." *Calvert Cliffs' Coordinating Committee, Inc. v. United States Atomic Energy Commission,* 146 U.S.App.D.C. 33, at 39, 449 F.2d 1109, at 1115 (1971) (emphasis in original). Here defendants have clearly not discharged those duties. Despite its elaborate table of contents and a generous ration of environmentally irrelevant "filler", the Assessment is not an adequate environmental impact statement, nor was the process which led to its preparation what NEPA contemplates. Indeed, it is clear that the decision to build the highway in the Atrato route was made well before the statement was begun,[6] thus ignoring Congress' intent that "decisions about federal actions . . . be made only after responsible decision-makers had fully adverted to the environmental consequences of the actions, and had decided that the public benefits flowing from the actions outweighed their environmental costs.[7] Thus, the harm with which courts must be concerned in NEPA cases is not, strictly speaking, harm to the environment, but rather the failure of decision-makers to take environmental factors into account in the way that NEPA mandates." *Jones v. District of Columbia Redevelopment Land Agency,* 162 U.S.App.D.C. 366 at 376, 499 F.2d 502 at 512 (1974).

It is therefore, by the Court, this 17th day of October, 1975

Ordered that the Defendant, their agents, officers, servants, employees, and attorneys, and any person in active concert or participation with them are hereby enjoined from entering into any contract, obligating any funds, expending any funds, or taking any other action whatsoever in furtherance of construction of the Darien Gap Highway, pending final hearing and disposition of this action, or unless and until the Defendants have taken all action necessary to comply fully with the substantive and procedural requirements of the National Environmental Policy Act of 1969, Pub. L.No.91–190, 83 Stat. 852. 42 U.S.C. § 4321 *et seq.;* United States Department of Transportation Order 5610.1A October 4, 1971, *revised,* Order 5610.1B,

5. Exhibit A to defendants' Memorandum in Opposition to Motion For Preliminary Injunction, p. 171.

6. See 1968 Report of the Darien Subcommittee, *Final Conclusions Regarding Location, Design and Construction of the Pan American Highway Through the "Darien Gap" In The Republics of Panama and Colombia,* Exhibit C to Defendants' Memorandum in Opposition to Motion For Preliminary Injunction. See also Exhibit C to defendants' Memorandum in Opposition to Motion For Preliminary Injunction, Affidavit of Wesley S. Mendenhall, Jr.

7. Footnote omitted.

39 Fed.Reg. 35235 (September 20, 1974); and Federal Highway Administration Policy and Procedure Memorandum 90–1, September 7, 1972, *revised* effective November 29, 1974, 23 C.F.R. Parts 771, 790 and 795, 39 Fed.Reg. 41804 (December 2, 1974), including, but not limited to, the preparing (including any necessary studies), circulating for comment, making available to the public, *and considering* a detailed statement of the environmental impact of the Defendants' action to construct a highway through the Darien Gap region, and it is further

Ordered that the United States Marshal shall serve a copy of this order forthwith upon the Defendants.