Sarah FELD et al., Plaintiffs,

v.

Stephen BERGER, Individually and as Commissioner of the New York State Department of Social Services, et al., Defendants.

No. 75 Civil 5610.

United States District Court,
S. D. New York.

Dec. 28, 1976.

Philip M. Gassel, Jane Greengold Stevens, Andrew P. Zweben, Legal Services for the Elderly Poor, New York City, and Daniel J. Wise, Queens Legal Services Corp., Long Island City, N. Y. for plaintiffs.

Louis J. Lefkowitz, Atty. Gen. of N. Y., New York City, for defendant Berger; Michael P. Fogarty, Asst. Atty. Gen., New York City, of counsel.

W. Bernard Richland, Corp. Counsel, New York City, for defendants Dumpson, Friedman, Mazzola; Charles W. Segal, Asst. Corp. Counsel, New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

This is a case that does not belong in this court. It involves three governmental agencies—federal, state and city—and centers about regulations so drawn that they have created a Serbonian bog from which the agencies seemingly are unable to extricate themselves. An attorney representing one agency describes the situation as in "a confusing state of flux," a gross understatement. It is a mess. The city expresses concern that if it complies with the regulations as interpreted by the federal government it may not receive reimbursement from the state because the state differs from that interpretation. It borders on the absurd that federal, state and local officials charged with the administration of the Social Security Act cannot reach an accommodation as to the meaning of the regulations

which they drafted themselves but instead force a court action for their interpretation.[1]

Caught in the crossfire of this bureaucratic controversy are the four plaintiffs, residents of nursing homes in New York City which provide skilled nursing care.[2] Two of the plaintiffs are 82 years of age, one is 77 years of age and the fourth is 62. They are supported solely by Medicaid[3] payments made by the New York City Department of Social Services. Each learned[4] that he was to be transferred to a facility which provides a lower level of care than the one in which he is now residing, with a corresponding reduction in his Medicaid benefits. These transfers were ordered by the City Department of Social Services as a result of "utilization review," a periodic assessment of the needs of nursing home patients to ensure that they are receiving an appropriate level of care and that Medicaid resources are not being wasted.[5] None of the plaintiffs received notice of his impending transfer from any governmental agency.

Upon learning of the decision to transfer him each patient requested and was granted a hearing to appeal the decision. Plaintiffs, now represented by counsel, sought to examine their case files and records prior to the hearings. With the exception of one document which merely states the reasons for the transfer, they were refused such inspection. A hearing was afforded plaintiff Feld. Although she defaulted because her attorney felt she could not adequately prepare for the hearing in the absence of meaningful discovery, the decision to transfer her was reversed after the commencement of this action.[6] Hearings have not been held as to the other plaintiffs. By stipulation of the parties they are continuing to receive Medicaid payments at their former levels and their hearings are deferred pending the outcome of this litigation.

▮▮▮ Plaintiffs, suing on behalf of themselves and all others similarly situated,[7] attack (1) the failure of defendants to give timely written notice of the

1. Judge Friendly has recently observed that "there has developed a degree of complexity in the Social Security Act and particularly the regulations which make them almost unintelligible to the uninitiated." *Friedman v. Berger*, 547 F.2d 724 at 727 n. 7 (2d Cir. 1976); *see also Friedman v. Berger*, 409 F.Supp. 1225, 1225–26 (S.D.N.Y.1976) ("an aggravated assault on the English language").

2. There are four classes of facilities providing decreasing levels of inpatient health care: acute care facilities (hospitals), skilled nursing facilities (in which plaintiffs now reside), intermediate care facilities (also known as health related facilities), and domiciliary care facilities.

3. The Medicaid program, established in 1965 by Title XIX of the Social Security Act, 42 U.S.C. § 1396, et seq., is a program of federal reimbursement for states which provide medical assistance for needy persons. A state desiring to participate in the Medicaid program must submit to the Department of Health, Education and Welfare ("HEW") a plan conforming to the requirements of the Social Security Act and the regulations promulgated thereunder. If the plan is approved the state is eligible to receive reimbursement. 42 U.S.C. §§ 1396a(b), 1396b(a).

4. Plaintiffs Lent, Tamasi and Bowers were informed by a social worker at their nursing home. The son of plaintiff Feld received a letter from the nursing home where his mother resided.

5. Utilization review is mandated by the Social Security Act, 42 U.S.C. § 1396a(a)(26), and by the implementing HEW regulations, 45 C.F.R. §§ 250.18(a)(1)(iii), 250.19 (1975).

6. Plaintiffs' counsel contend that the reversal was because of the lawsuit.

7. Another plaintiff, the mother of four minor children, receives public assistance under the Aid to Families with Dependent Children ("AFDC") program, 42 U.S.C. § 601, et seq., rather than Medicaid. She received timely and adequate notice, *see infra* p. 1360, that her semi-monthly assistance checks would be reduced to recoup an allegedly fraudulent overpayment. She disputed the charge and demanded access to her case file prior to a scheduled hearing, claiming that the records contained evidence to disprove the charge. After some delay her attorney was permitted to examine the file; her aid was restored after the hearing. Thus her claim is dismissed as moot and the subsequent discussion is confined to the Medicaid plaintiffs. *See Preiser v.*

decision to transfer them; (2) a provision of the state regulations which allows defendants to reduce a patient's level of aid prior to a hearing; and (3) defendants' refusal to allow plaintiffs to inspect their case files and the documents to be used at their hearings.[8]  Plaintiffs allege both that defendants' practices deny them due process of law and that they violate applicable federal regulations.  Plaintiffs claim that their transfer to another facility · could cause them serious illness or death, both because they would receive a lower level of medical care and because of the psychological trauma inflicted by the transfer.  Plaintiffs further claim that defendants' refusal to afford them timely notice or full discovery prevents plaintiffs from adequately contesting the decision to transfer them.  They seek declaratory and injunctive relief against these practices and regulations.

The defendants are the Commissioner of the New York State Department of Social Services[9] (the state agency responsible for the implementation of the Medicaid program throughout the state),[10] the Commissioner of the New York City Department of Social Services and two city officials responsible for administering the relevant aspects of the Medicaid program in New York City.[11]

■  Before the court are plaintiffs' motion for class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure and plaintiffs' motion for summary judgment.  Since the latter motion may be dispositive of the controversy, we consider it first.  The defendants have not controverted any of the material facts upon which plaintiffs rely in support of their motion for summary judgment, nor have they submitted a statement pursuant to Local Gen-

*Newkirk*, 422 U.S. 395, 401–03, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975); *Sosna v. Iowa*, 419 U.S. 393, 399, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975); *Sanders v. Wyman*, 464 F.2d 488 (2d Cir. 1972), *cert. denied*, 409 U.S. 1128, 93 S.Ct. 950, 35 L.Ed.2d 261 (1973).

**8.**  The complaint also alleges that the defendants deny patients in nursing homes due process of law in that they do not provide any notice of a decision to transfer a patient "to the nearest relative or friend of such patients, including patients who are confused or disoriented."  However, there is no allegation, nor any statement in any of the affidavits in support of plaintiffs' motions, that any of the named plaintiffs is or was confused or disoriented, or that they would have been unable to comprehend the significance of notice had it been given to them.  It is thus apparent that none of the named plaintiffs has suffered injury as a result of the alleged practice of the defendants and accordingly they lack standing to raise this claim.  *Kantrowitz v. Weinberger*, 388 F.Supp. 1127, 1128 n.* (D.D.C.1974), *aff'd*, 530 F.2d 1034 (D.C.Cir.1976); *Burchette v. Dumpson*, 387 F.Supp. 812, 819–20 (E.D.N.Y.1974); *see also Broadrick v. Oklahoma*, 413 U.S. 601, 610–11, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); *Cramp v. Board of Public Instruction*, 368 U.S. 278, 282–83, 82 S.Ct. 275, 7 L.Ed.2d 285 (1961); *United Public Workers v. Mitchell*, 330 U.S. 75, 89–90, 67 S.Ct. 556, 91 L.Ed. 754 (1947).

**9.**  Since the institution of this suit Stephen Berger, named as Commissioner in the complaint, has resigned and has been replaced by Phillip

Toia, who is therefore automatically substituted as a defendant.  Rule 25(d)(1), Fed.R.Civ.P.

**10.**  Under New York State's plan for the operation of the Medicaid program, see n. 3 *supra*, the State Department of Social Services is the "single state agency" which the Social Security Act requires be responsible for supervising the program throughout the state.  N.Y.Soc. Serv.Law § 363–a (McKinney Supp.1975); *see* 42 U.S.C. § 1396a(a)(5).  However, the City Department of Social Services is responsible for the administration of the program within New York City subject to the supervision of the State Department of Social Services.  N.Y. Soc.Serv.Law § 365 (McKinney Supp.1975).  Decisions to terminate or reduce Medicaid benefits are made by the city agency; appeals therefrom are heard by the state agency.  *See* 18 N.Y.C.R.R. Part 358.

**11.**  Plaintiffs did not name as a defendant the Secretary of HEW although HEW's regulations are at issue here.  The city defendants have moved to join the Secretary as an indispensable party defendant pursuant to Rules 19 and 21, Fed.R.Civ.P., or in the alternative that the views of HEW be solicited with respect to the federal and state regulations.  HEW has submitted an expression of its views, referred to hereafter, and since it is questionable that HEW is an indispensable party the motion is denied.  *See Alexander v. Swank*, 314 F.Supp. 1078, 1081 (N.D.Ill.1969); *National Welfare Rights Org. v. Wyman*, 304 F.Supp. 1346, 1349–50 (E.D.N.Y.1969).

eral Rule 9(g), indicating the existence of a genuine issue of material fact. Accordingly, the case is ripe for summary judgment.[12]

## NOTICE AND CONTINUATION OF AID

### a. Federal Fair Hearing Regulations

New York State, as a participant in the Medicaid program, must conform to the Social Security Act and all valid regulations promulgated thereunder.[13] Those regulations mandate certain procedures in the event of any decision to "discontinue, terminate, suspend or reduce assistance."[14] A recipient of Medicaid has the right to an evidentiary hearing on appeal from a decision to reduce or terminate his aid.[15] Except in certain specified instances, which are at the center of this controversy and are discussed hereafter, he must be given "timely" and "adequate" notice of such action. Timely notice is defined as notice "mailed at least 10 days before the date . . . upon which the action would become effective."[16] Adequate notice means a written notice that includes a statement of what action the agency intends to take, the reasons for the intended agency action, the specific regulations supporting such action, explanation of the individual's right to request an evidentiary hearing (if provided) and a State agency hearing, and the circumstances under which assistance is continued if a hearing is requested.[17]

If a recipient seasonably requests a hearing his assistance must be continued at its original level until a decision is rendered after the hearing.[18]

### b. State Fair Hearing Regulations

Despite the aforesaid provisions of the federal regulations, plaintiffs did not receive timely and adequate notice of the determination to reduce their benefits by transferring them to another facility. In addition, after plaintiffs filed their original complaint, the State Department of Social Services issued new regulations effective August 10, 1976, governing the procedures to be followed when financial assistance is

12.  Plaintiffs' constitutional claims, raising fundamental questions of notice and denial of a fair opportunity to present an adequate case, are not frivolous or insubstantial. *See Almenares v. Wyman*, 453 F.2d 1075, 1082–83 (2d Cir. 1971), *cert. denied*, 405 U.S. 944, 92 S.Ct. 962, 30 L.Ed.2d 815 (1972); *cf. Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). Jurisdiction as to this claim is thus based upon 28 U.S.C. § 1343(3), and there is pendent jurisdiction over the nonconstitutional claim. *Hagans v. Lavine*, 415 U.S. 528, 536, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974); *Rosado v. Wyman*, 397 U.S. 397, 402–05, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970); *Friedman v. Berger*, 547 F.2d 724 at 727 n. 6 (2d Cir. 1976); *Woodruff v. Lavine*, 399 F.Supp. 1008, 1010–11 (S.D.N.Y. 1975). However, in accordance with the directions of the Supreme Court we consider first the nonconstitutional claims. *Hagans v. Lavine*, 415 U.S. 528, 543–45, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974); *Rosado v. Wyman*, 397 U.S. 397, 403, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970).

13.  42 U.S.C. §§ 1396a, 1396c. *See, e. g., Shea v. Vialpando*, 416 U.S. 251, 253, 94 S.Ct. 1746, 40 L.Ed.2d 120 (1974); *King v. Smith*, 392 U.S. 309, 317, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968); *Aitchison v. Berger*, 404 F.Supp. 1137, 1141 (S.D.N.Y.1975). Although the cited Supreme

Court cases arise under the AFDC program, 42 U.S.C. § 601, et seq., the relevant portions of the Medicaid program are identical. *Compare* 42 U.S.C. §§ 602, 604 *with* 42 U.S.C. §§ 1396a, 1396c. Statutory authority for the regulations in question is found in 42 U.S.C. § 1302.

14.  45 C.F.R. § 205.10(a)(4) (1975). These regulations embody the due process requirements of *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). They apply not only to Medicaid but to certain other federally supported welfare programs such as AFDC. 45 C.F.R. § 205.10(a) (1975).

15.  45 C.F.R. § 205.10(a)(1) (1975).

16.  *Id.* § 205.10(a)(4)(i)(A).

17.  *Id.* § 205.10(a)(4)(i)(B).

18.  *Id.* § 205.10(a)(6)(i). There are two exceptions to the requirement of aid continuation, neither of which is applicable in this case. *Id.* § 205.10(a)(6)(i)(A) and (B).

Even when "timely" notice of agency action is not required, if the recipient requests a hearing within 10 days of the date of the action, his aid must be reinstated pending a hearing. *Id.* § 205.10(a)(7).

reduced pursuant to utilization review.[19] This regulation provides in relevant part:

> When utilization review committee determinations require that medical assistance payments be reduced or discontinued, the social services official or his designee who has the appropriate authority, shall take the following action:
>
> (a) The recipient, his representative or appropriate relative shall be notified in writing of such action. Such notifications shall be by provision of "adequate" notice . . . .. Such notice and the action taken thereon shall be consistent with both state and federal requirements relating to utilization review.
>
> (b) Medical assistance payments shall not be continued on behalf of a recipient of medical assistance when such recipient requests a fair hearing to contest the determination of a utilization review committee that a particular level of medical care is no longer required. Medical assistance payments on behalf of such recipient shall be terminated as of the date that the utilization review committee determination becomes effective.[20]

Contrary to the federal regulations already discussed, the new state regulation eliminates the requirement for timely *and* adequate notice and instead permits only adequate notice. Moreover, the new regulation allows the state to reduce or terminate a recipient's aid pending the determination of his fair hearing, also contrary to the federal regulation. Thus, the new state regulation, as well as the procedures followed in plaintiffs' cases, conflict with the federal regulations. In fact, prior to the promulgation of the new state regulations, the State Department of Social Services had been informed by HEW that the federal fair hearing regulations, including the requirements of timely and adequate notice and continuation of aid pending a hearing, applied to reductions of aid based upon utilization review.[21] In the face of this position, the state still declared its regulation effective and so far as appears on this record never responded to HEW's criticism. Moreover, the plaintiffs have asserted, and defendants have not denied, that the regulation was not submitted to HEW for its approval as required by federal regulations.[22]

Defendants claim, however, that plaintiffs' situation falls within an exception to the general requirement of timely and adequate notice and continuation of aid. They point to a portion of the HEW regulations which provides that a state

> may dispense with timely notice but shall send adequate notice not later than the date of action when:
>
> . . . . .
>
> (D) The recipient has been placed in skilled nursing care, intermediate care or long-term hospitalization.[23]

Defendants argue that since plaintiffs are residents of skilled nursing homes, this regulation on its face allows their assistance levels to be reduced or terminated at any time without timely notice.

However, defendants' interpretation of the HEW regulations is incorrect. This exception to the requirement of timely notice is one of nine which were established by HEW in 1973 to deal with "situations where, as a matter of law, the change in payment results *necessarily* from the *ascertained circumstances* in the particular case," and in which therefore "[t]he chances of there being a factual dispute are minimal."[24] Other circumstances in which the regulations provide that timely notice is not required include, *inter alia*, when the agen-

---

**19.** Plaintiffs then amended their complaint to include a challenge to the validity of this regulation as applied to them.

**20.** 18 N.Y.C.R.R. § 360.33.

**21.** Letter from HEW to State Department of Social Services, dated July 27, 1976.

**22.** 45 C.F.R. § 201.3 (1975).

**23.** *Id.* § 205.10(a)(4)(ii)(D).

**24.** 38 Fed.Reg. 22005, 22006 (1973) (emphasis supplied).

cy has "factual information confirming the death of a recipient," when there is a "clear written statement signed by a recipient that he no longer wishes assistance," when the recipient's whereabouts are unknown, or where the recipient's physician prescribes a change in the level of care.[25] In each of these cases there is unlikely to be any disputed factual issue relevant to the appropriate level of aid. Moreover, the recipient is almost certain to know in advance the facts upon which the decision to reduce the level of aid is based. Therefore in such cases there is no need to provide the recipient timely advance notice to advise him of the grounds of the action and to enable him to challenge it.[26]

■ When a recipient is initially placed into a skilled nursing home or when he voluntarily changes nursing homes he would already be aware of all the essential facts upon which his proper aid level is determined, namely his residence in a particular nursing home. However, this would not be true when an agency decides, after utilization review, to transfer a patient to a lesser level of care based upon *its* determination that the patient's current level of care is inappropriate. A Medicaid recipient would not necessarily know in advance the factual and medical bases upon which a utilization review committee concluded that he was not receiving an appropriate level of care and might well wish to challenge those bases.[27] The provision of the HEW regulations relied on by defendants does not allow an agency carte blanche to reduce or terminate the aid of a Medicaid recipient merely because the recipient happens to reside in a nursing home.

■ The Court's conclusion is buttressed by an affidavit from the Acting Deputy Regional Commissioner of the Social and Rehabilitation Service of HEW, who is responsible for the administration of the federal aspects of the Medicaid program in New York. He states that none of the exceptions provided in the federal regulations apply to a case such as plaintiffs' and that timely notice and continuation of the patient's aid pending a hearing are required in such a case. This interpretation of the

**25.** 45 C.F.R. § 205.10(a)(4)(ii)(A), (B), (E), (H) (1975). The full text of the regulation is as follows:

The agency may dispense with timely notice but shall send adequate notice not later than the date of action when:

(A) The agency has factual information confirming the death of a recipient or of the AFDC payee when there is no relative available to serve as new payee;

(B) The agency receives a clear written statement signed by a recipient that he no longer wishes assistance, or that gives information which requires termination or reduction of assistance, and the recipient has indicated, in writing, that he understands that this must be the consequence of supplying such information;

(C) The recipient has been admitted or committed to an institution, and further payments to that individual do not qualify for Federal financial participation under the State plan;

(D) The recipient has been placed in skilled nursing care, intermediate care or long-term hospitalization;

(E) The claimant's whereabouts are unknown and agency mail directed to him has been returned by the post office indicating no known forwarding address. The claimant's check must, however, be made available to him if his whereabouts become known during the payment period covered by a returned check;

(F) A recipient has been accepted for assistance in a new jurisdiction and that fact has been established by the jurisdiction previously providing assistance;

(G) An AFDC child is removed from the home as a result of a judicial determination, or voluntarily placed in foster care by his legal guardian;

(H) A change in level of medical care is prescribed by the recipient patient's physician;

(I) A special allowance granted for a specific period is terminated and the recipient has been informed in writing at the time of initiation that the allowance shall automatically terminate at the end of the specified period.

45 C.F.R. § 205.10(a)(4)(ii).

**26.** *Harrell v. Harder*, 369 F.Supp. 810, 819–23 (D.Conn.1974); *see Goldberg v. Kelly*, 397 U.S. 254, 267–68, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

**27.** Plaintiffs contend that utilization review decisions are frequently unreliable or inaccurate. Affidavit of Philip M. Gassel (filed Sept. 10, 1976), ⸗ 8.

regulations by the agency which promulgated them and is responsible for their enforcement is entitled to great weight.[28]

■ Accordingly the Court grants summary judgment to plaintiffs on this issue and declares that the defendants' proposed transfer of Medicaid recipients residing in skilled nursing facilities to facilities providing a lesser level of care without providing "timely" notice as required by 45 C.F.R., section 205.10(4)(i), and so much of 18 N.Y. C.R.R., section 360.33, as permits that practice and permits aid levels to be reduced or terminated prior to a fair hearing when one is requested, are in violation of applicable and controlling federal regulations.

## DISCOVERY

■ The federal regulations also require that a Medicaid recipient who requests a hearing to appeal a decision to reduce or terminate his benefits must be allowed to examine

> the contents of his case file and all documents and records to be used by the agency at the hearing at a reasonable time before the date of the hearing as well as during the hearing.[29]

Plaintiffs contend that although the state regulations in this instance conform to the federal regulations,[30] the defendants have arbitrarily and in violation of both sets of regulations denied plaintiffs access to their case files and other pertinent documents. Defendants attempt to justify their admitted refusal to provide access to the plaintiffs' files upon a claim that the files contain much confidential information which state regulations do not permit to be disclosed[31] and that in some cases the medical information contained therein might be harmful to the patient if he learned of it. Whatever the force of these arguments they were rejected by HEW when it issued the regulations in question.[32] Those regulations clearly control.[33] Accordingly, the Court grants summary judgment to the plaintiffs on this issue and declares that the defendants' practice of refusing to allow nursing home residents who have requested hearings to contest a determination to transfer them to another institution, to inspect, reasonably in advance of their hearing, their entire case files and all documents and records upon which the defendants intend to rely in support of the decision to transfer, is in violation of applicable and controlling federal regulations.

## CLASS ACTION

■ Finally, plaintiffs move for class action certification pursuant to Rule 23 of the Federal Rules of Civil Procedure. This Court would deem class certification superfluous. The defendants are public officials charged with compliance with and enforcement of federal as well as state laws. The Court assumes these public officials, mindful of their responsibilities, will apply the determination here made equally to all persons similarly situated. "[I]t would be unthinkable that the . . . defendants would insist on other actions being brought" to vindicate the same rights at issue here.[34]

---

**28.** *See INS v. Stanisic*, 395 U.S. 62, 72, 89 S.Ct. 1519, 23 L.Ed.2d 101 (1969); *Udall v. Tallman*, 380 U.S. 1, 16–17, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965); *Perine v. William Norton & Co.*, 509 F.2d 114, 120 (2d Cir. 1974). *Cf. Rosado v. Wyman*, 397 U.S. 397, 406–07, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970).

**29.** 45 C.F.R. § 205.10(a)(13)(i) (1975).

**30.** 18 N.Y.C.R.R. §§ 358.9(d), 358.12; *Mas v. Lavine*, 76 Misc.2d 344, 351 N.Y.S.2d 777 (Sup. Ct.1973), *aff'd*, 43 App.Div.2d 831, 351 N.Y. S.2d 941, *appeal dismissed*, 415 U.S. 953, 94 S.Ct. 1479, 39 L.Ed.2d 569 (1974).

**31.** *See, e. g.*, 18 N.Y.C.R.R. § 357.2.

**32.** HEW has expressed its opinion that the applicable regulations—which are clear on their face—do indeed require the agency to provide the discovery sought by plaintiffs here. *See* n. 28 *supra*.

**33.** *See* n. 13 *supra*.

**34.** *Vulcan Society v. Civil Service Comm'n*, 490 F.2d 387, 399 (2d Cir. 1973); *see also Finnerty v. Cowen*, 508 F.2d 979, 986 n. 20 (2d Cir. 1974); *Galvan v. Levine*, 490 F.2d 1255, 1261 (2d Cir. 1973), *cert. denied*, 417 U.S. 936, 94 S.Ct. 2652, 41 L.Ed.2d 240 (1974); *Thomas v.*

**1364**

CONCLUSION

The city defendants' motion to have the Secretary of HEW joined as a party defendant is denied. The plaintiffs' motion for class certification is denied. The plaintiffs' motion for summary judgment is granted to the extent indicated. The plaintiffs are entitled to an injunction restraining the defendants from transferring them without following the required procedures.

Submit order on notice.

*Weinberger*, 384 F.Supp. 540, 543 (S.D.N.Y. 1974); *McDonald v. McLucas*, 371 F.Supp. 831, 833–34 (S.D.N.Y.), *aff'd*, 419 U.S. 987, 95 S.Ct. 297, 42 L.Ed.2d 261 (1974).