NEW YORK STATE PSYCHIATRIC AS-SOCIATION, a division of Area II Council of the American Psychiatric Association, Inc., Bizhan Nia, M. D. and Marvin Kaplan, M. D., Plaintiffs,

v.

Barbara BLUM, as Commissioner of the New York State Department of Social Services and David Axelrod, M. D., as Commissioner of the New York State Department of Health, Defendants.

No. 79 Civ. 2426.

United States District Court,
S. D. New York.

Aug. 7, 1979.

---

Seligman, Stein & Abramowitz, Mineola, N. Y., for plaintiffs; Seth P. Stein, Mineola, N. Y., of counsel.

Robert Abrams, Atty. Gen. of the State of New York, New York City, for defendants; Beryl Kuder, New York City, of counsel.

## OPINION

ROBERT J. WARD, District Judge.

Plaintiffs, New York State Psychiatric Association, a division of Area II Council of the American Psychiatric Association, Inc., Bizhan Nia, M.D. and Marvin Kaplan, M.D., seek a preliminary injunction pursuant to Rule 65(a), Fed.R.Civ.P., enjoining defendants, Barbara Blum, Commissioner of the New York State Department of Social Services and David Axelrod, Commissioner of the New York State Department of Health, from implementing and enforcing Part 85.28–31 of the Administrative Rules and Regulations, Subchapter K, Chapter 11, Title 10 of the Official Compilation of Codes, Rules and Regulations ("Part 85"). For the reasons hereinafter stated, plaintiffs' motion is denied.

### The Facts

Plaintiffs are a not-for-profit corporation representing professional psychiatrists and two private practicing member psychiatrists. Their complaint challenges, on various constitutional and statutory grounds Part 85, a regulation issued on February 26, 1979 by the New York State Department of Health ("the Department"). The regulation was issued pursuant to the Department's authority to establish standards for all non-institutional medical care and services rendered under the state's medicaid program.[1] See N.Y.Soc.Serv.Law § 364.2(b) (McKinney 1976 & Supp.1978).

Part 85 by its terms requires a private psychiatrist treating a Medicaid recipient who seeks more than 15 visits in a six-month period to submit a treatment plan before the 15th visit to the local professional director of the county Department of Social Services "for review and decision as to need for continued care and services." If the local professional director does not approve the plan, the director is required to consult with a "qualified psychiatrist" for "advice, opinion and recommendation." All final decisions as to the coverability of benefits, however, are to be made by the local professional director. Part 85 also requires that after the initial treatment plan review, the local professional director fix a date for submission of subsequent treatment plans. Finally, although Part 85 directs psychiatrists to continue to provide care and services pending review, it makes no provision for payment to the psychiatrist for care already provided prior to the local professional director's final determination.

On May 9, 1979 plaintiffs filed the instant complaint alleging that defendants in promulgating and implementing Part 85 violated the Equal Protection, Due Process and Supremacy Clauses of the United States Constitution, the Equal Protection and Due Process Clauses of the New York State Constitution, and the federal Medicaid Act, 42 U.S.C. § 1396, et seq., and the regula-

---

1. The Medicaid program, established in 1965 by Title XIX of the Social Security Act, 42 U.S.C. § 1396, et seq., is a program of federal reimbursement for states which provide medical assistance for needy persons. A state desiring to participate in the Medicaid program must submit to the Department of Health, Education and Welfare a plan conforming to the requirements of the Social Security Act and the regulations promulgated thereunder. If the plan is approved the state is eligible to receive reimbursement. 42 U.S.C. §§ 1396a(b), 1396b(a).

Since 1966 New York State has operated a state medicaid program which authorizes and directs the acceptance of federal funds under the federal medicaid program. The disbursement of funds to aid persons eligible for medical assistance must be certified as proper for payment by the Department of Social Services. See N.Y.Soc.Serv.Law §§ 365–a, 366–a, and 367 (McKinney 1976 & Supp.1978).

tions issued thereunder. The complaint seeks declaratory and injunctive relief. By order to show cause dated May 14, 1979 plaintiffs moved for a preliminary injunction.

Plaintiffs' application for a preliminary injunction was scheduled for hearing on June 4, 1979. At that time, the Court adjourned the matter until June 18, 1979 to allow the parties to enter into settlement negotiations. In addition to resolving certain points concerning standards of review to be applied in enforcing Part 85, the parties preliminarily agreed that defendants would provide all fair hearing rights guaranteed to Medicaid recipients under federal and state law.

During the course of the parties' subsequent settlement negotiations counsel for plaintiffs, however, was informed by defendants' counsel that although defendants were willing to afford fair hearing rights to Medicaid recipients in treatment with private practicing psychiatrists, the hearings that defendants would allow would be *post*-termination rather than *pre*-termination. Since post-termination hearings were unacceptable to plaintiffs, plaintiffs' counsel suggested that the Court entertain oral argument on this aspect of plaintiffs' application for a preliminary injunction and reserve plaintiffs' right to a later hearing on the unresolved aspects of the application for a preliminary injunction. The Court heard oral argument on this question on June 22, 1979 and received additional submissions from the parties.

Thus, the sole issue[2] before the Court upon the instant motion is whether defendants should be preliminarily enjoined from implementing and enforcing Part 85.

Plaintiffs argue that an injunction should be granted because the regulation in its present form fails to provide Medicaid recipients in treatment with private practicing psychiatrists pre-termination fair hearings before treatment plans are disapproved

by the local professional director. They contend that the United States Constitution and existing federal and state law require that all Medicaid recipients, including those in treatment with private practicing psychiatrists, be afforded pre-termination fair hearings prior to suspension, termination or reduction of their benefits.

Defendants argue that the post-termination procedures provided by Part 85, as it is presently administered, are in full compliance with all constitutional and statutory requirements.

*Discussion*

Plaintiffs premise jurisdiction upon 28 U.S.C. § 1331, 28 U.S.C. § 1343(3), and principles of pendent jurisdiction. Since plaintiffs' constitutional claims are neither insubstantial nor wholly without merit, under the doctrine of *Hagans v. Lavine*, 415 U.S. 528, 534–39, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974) jurisdiction exists under 28 U.S.C. § 1343(3). *See Lynch v. Philbrook*, 550 F.2d 793 (2d Cir. 1977); *Andrews v. Maher*, 525 F.2d 113 (2d Cir. 1975). Having found jurisdiction properly established under this section, the Court finds it appropriate to exercise pendent jurisdiction over plaintiffs' statutory claims. *Hagans v. Lavine, supra*, 415 U.S. at 536; *Lynch v. Philbrook, supra*, 550 F.2d at 795. In light of these findings, the Court need not determine whether jurisdiction also exists under 28 U.S.C. § 1331.

The recently reiterated standard in this Circuit for issuance of a preliminary injunction calls for a clear showing of (a) irreparable harm *and* (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief. *Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979); *accord Caulfield v. Board of Educa-*

---

2. Plaintiffs have reserved their rights to a later hearing on the other major unresolved aspect of their application for a preliminary injunction—whether federal and state law require that recipients have aid continued (subject to recovery) pending the determination of their fair hearings. The Court therefore will not consider the issue at this time.

*tion,* 583 F.2d 605, 610 (2d Cir. 1978); *see also New York v. Nuclear Regulatory Commission,* 550 F.2d 745, 750, 755 (2d Cir. 1977); *Triebwasser & Katz v. American Telephone & Telegraph Co.,* 535 F.2d 1356, 1358–59 (2d Cir. 1976). It is clear that such relief is "extraordinary" and "drastic" and should not be routinely granted. *Medical Society of State of New York v. Toia,* 560 F.2d 535, 538 (2d Cir. 1977); *see also Pride v. Community School Board,* 482 F.2d 257, 264 (2d Cir. 1973); *Dopp v. Franklin National Bank,* 461 F.2d 873, 878 (2d Cir. 1972). In order to determine whether plaintiffs are entitled to a preliminary injunction, it is necessary first to examine plaintiffs' show-ing on the merits and second their showing of irreparable harm.

Plaintiffs contend that defendants' refusal to provide pre-termination hearings in implementing Part 85 blatantly violates existing federal and state regulations applicable to all Medicaid recipients.[3] Specifically, plaintiffs point to 42 C.F.R. § 431.230[4] which directs state Medicaid agencies not to terminate or reduce services when a recipient requests a fair hearing prior to the date of proposed agency action. Plaintiffs further argue that state regulations, in compliance with federal law, also provide for a pre-termination fair hearing. 18 N.Y.C.R.R. § 358.8[5] provides that when a recipient

---

**3.** The regulations were promulgated following the Supreme Court's decision in *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) which held that pre-termination evidentiary hearings were necessary to provide welfare recipients with procedural due process.

**4.** 42 C.F.R. Part 431, Subpart E—Fair Hearings for Applicants and Recipients provides:

PROCEDURES

§ 431.230 Maintaining services.

(a) If the agency mails the 10-day or 5-day notice as required under § 431.211 or § 431.-214 of this subpart, and the applicant or recipient requests a hearing before the date of action, the agency may not terminate or reduce services until a decision is rendered after the hearing unless—

(1) It is determined at the hearing that the sole issue is one of Federal or State law or policy; and

(2) The agency promptly informs the applicant or recipient in writing that services are to be terminated or reduced pending the hearing decision.

(b) If the agency's action is sustained by the hearing decision, the agency may institute recovery procedures against the applicant or recipient to recoup the cost of any services furnished the recipient, to the extent they were furnished solely by reason of this section.

44 Fed.Reg. 17, 933 (1979) (to be codified in 42 C.F.R. § 431.230).

**5.** 18 N.Y.C.R.R. §§ 358.4 & 358.8 provide in pertinent part:

358.4 Right to a fair hearing. The following persons shall be entitled to a fair hearing:

(a) Applicants for or recipients of aid to dependent children, aid to the aged, blind or disabled, medical assistance for needy persons, home relief or veterans assistance on the following grounds:

(1) denial of assistance;

(2) failure to determine the applicant's eligibility and, if found eligible, to issue a cash grant or authorize medical assistance within 30 days from the date his application therefor was made;

(3) inadequacy in amount or manner of payment of assistance;

(4) discontinuance or suspension of assistance, in whole or in part;

(5) objections to department policy as it affects the applicant or recipient's situation; and

(6) any other grounds affecting the applicant or recipient's entitlement to assistance or the amount thereof or the time of payment thereof, including, but not limited to, determinations of employability where assistance has not been discontinued or reduced.

358.8 Continuation of assistance payments, medical assistance authorization and food stamp authorization when fair hearing is requested. [Additional statutory authority: Social Services Law, §§ 20, 34]

(a) Except as set forth in this section, in cases of any proposed action to discontinue or reduce assistance payments, medical assistance authorization, or authorization for food stamp participation, timely and adequate notice thereof detailing the reasons for the proposed action shall be sent to the recipients. Under this requirement:

(1) *Timely* means that the notice is mailed at least 10 days before the date of action, that is, the date upon which the action would become effective, except as follows: In food-stamp authorization cases, *timely* means that the notice is mailed at least 15 days before the date of action unless the expiration of the current certification period occurs within 15 days, in which case, it means the remainder of the certification period.

requests a fair hearing within the timely notice period (10 days prior to agency action), assistance shall be continued until the fair hearing decision is rendered. The section, moreover, specifically applies to proposed action "to discontinue or reduce . . . medical assistance authorization." *See* 18 N.Y.C.R.R. § 358.8(a). Thus, plaintiffs urge, defendants seek by their implementation of Part 85 in its present form, to deny pre-termination fair hearings to one group of Medicaid recipients, those receiving treatment from private practicing psychiatrists, in clear violation of federal and state law.

Defendants do not dispute the general right of Medicaid recipients to pre-termination fair hearings. They do, however, offer two arguments in support of denying pre-termination hearings to Medicaid recipients in treatment with private practicing psychiatrists. The Court finds neither of defendants' arguments persuasive.

Initially, defendants assert that the treatment of recipients is not "terminated" or "reduced" through the operation of Part 85 but only "denied" and that there is thus no right to a pre-termination fair hearing under the cited regulations. This argument ignores the fact that all reviews of patient care pursuant to Part 85 occur after care has already been commenced. A patient enters treatment with a private practicing psychiatrist and if treatment is desired beyond the 15th visit within a six-month period, the psychiatrist must submit a treat-ment plan for approval of continued care and services. If the Medicaid agency disapproves the plan the patient's medical care is threatened with "termination" and if the Medicaid agency responds by permitting treatment only on a less frequent basis the patient's medical care is threatened with "reduction". In light of these facts, defendants' argument that no pre-termination hearing is required because there is no "termination" or "reduction" of benefits involved but only a "denial," is without merit.

Second, defendants maintain that the "utilization review procedures" contained in Part 85 substantially comply with the fair hearing requirements of the applicable federal regulations and that therefore no pre-termination hearing is necessary. This argument is undercut by the analysis and conclusion in *Feld v. Berger*, 424 F.Supp. 1356 (S.D.N.Y.1976),[6] that a utilization review procedure quite similar to that adopted under Part 85 was in direct violation of federal regulations. Although factual differences exist between the *Feld* case and the instant one, plaintiffs have in this Court's view raised a serious question whether the utilization review procedure under Part 85 constitutes an adequate substitute for a pre-termination fair hearing or satisfies the requirements of federal regulations.

In short, the Court finds that plaintiffs have met at least part of the burden necessary to obtain a preliminary injunction in

(2) *Adequate notice* means a written notice that includes details of reasons for the proposed action, explanation of the individual's right to conference, his right to request a fair hearing, and the circumstances under which assistance payments, medical assistance authorization or authorization for food stamp participation is continued if a fair hearing is requested.

.     .     .     .     .

This section goes on to specify at length the circumstances under which a recipient, whose assistance is to be "discontinued" or "reduced", may be entitled to a continuation of benefits during the pendency of hearing procedures.

**6.** The plaintiffs in *Feld* were residents in New York State nursing homes. They were supported in those homes by Medicaid benefits. Pursuant to a utilization review procedure which entailed a periodic assessment of the needs of nursing home patients to determine whether they were receiving appropriate care and the need for continued care and services the *Feld* plaintiffs were notified that they were to be transferred to a new facility which provided a lower level of care than their current residence with a corresponding reduction in Medicaid costs. Plaintiffs claimed, *inter alia*, that these state procedures violated federal regulations because the plaintiffs were not provided with a fair hearing and continuation of aid pending the hearing's determination. Judge Weinfeld found the state regulations in violation of federal regulations and granted plaintiffs summary judgment on the issue. *Feld v. Berger, supra*, 424 F.Supp. at 1363.

this Circuit. They have raised sufficiently serious questions going to the merits to provide a fair ground for litigation.

Plaintiffs however must also establish the element of the threat of irreparable harm as a prerequisite to preliminary injunctive relief. *Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc., supra; Caulfield v. Board of Education, supra.* They have clearly failed to do so in the instant case. Other than conclusory assertions that the irreparable harm to plaintiffs and their patients[7] is "clearly demonstrated" and that "Medicaid patients in treatment with private practicing psychiatrists risk potentially detrimental interruptions in ongoing treatment which cannot be corrected retroactively by a fair hearing decision", plaintiffs have adduced no evidence that they or their patients will suffer irreparable harm pending a final determination on the merits. The Court finds particularly significant the complete absence of affidavits from plaintiffs' patients indicating how the failure to provide pre-termination fair hearings will injure them. *See generally Becker v. Toia,* 439 F.Supp. 324, 336 (S.D.N.Y.1977).

Apparently conceding their failure to make a clear showing of irreparable injury, plaintiffs assert that the traditional standard for a preliminary injunction should not be applied in the instant case because a clear showing of a violation of federal law has been made. In support of this proposition, plaintiffs place principal reliance[8] upon Judge Friendly's statement in *Studebaker Corporation v. Gittlin,* 360 F.2d 692, 698 (2d Cir. 1966):

> This brings us to [defendant's] claim that [plaintiff] made no adequate showing of

need for injunctive relief in failing to demonstrate "irreparable injury." Recitation of this term generally produces more dust than light. A plaintiff asking an injunction because of the defendant's violation of a statute is not required to show that otherwise rigor mortis will set in forthwith; all that "irreparable injury" means in this context is that unless an injunction is granted, the plaintiff will suffer harm which cannot be repaired. At least that is enough where, as here, the only consequence of an injunction is that the defendant must effect a compliance with the statute which he ought to have done before

and contend that this is the relevant standard to be applied in the instant case. Subsequent case law in this Circuit, however, establishes that *Gittlin,* far from setting a more liberal standard for granting preliminary injunctive relief, merely stands for the proposition that irreparable injury means injury for which a monetary award cannot be adequate compensation and that where money damages provide adequate compensation a preliminary injunction will not issue. *See Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc., supra,* 596 F.2d at 72; cf. *Becker v. Toia, supra* (court found clear violation of federal law yet applied traditional standard requiring a showing of irreparable harm).

In sum, the Court finds that plaintiffs have not made a sufficiently clear showing of irreparable harm upon the existing record to warrant the granting of the preliminary relief they seek. The Court, of course, expresses no view as to whether permanent

7. Defendants have consistently argued that plaintiffs have no standing to assert the rights of their patients. Plaintiffs contend that their standing to assert their patients' rights is clearly established under the requirements of *Singleton v. Wulff,* 428 U.S. 106, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976). In view of the disposition of the instant motion, the Court need not decide the issue at this time.

8. Plaintiffs also rely upon the statement in *Sierra Club v. Coleman,* 405 F.Supp. 53, 54 (D.D.C. 1975) that " 'when . . . federal statutes have been violated, it has been a long standing

rule that a court should not inquire into the traditional requirements for equitable relief.' " It is clear, however, from a reading of the quoted language in context that the *Coleman* Court's statement was confined to cases similar to the one before it—cases where injunctive relief was sought because of failure to comply with the requirements of the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq.* In any event, as far as this Court's research discloses, there is no law in this Circuit extending the rule stated in *Coleman* to non-NEPA cases.

injunctive relief following a trial on the merits would be appropriate.

Accordingly, plaintiffs' motion is denied.

It is so ordered.