**Goldie MOFFITT, etc., Plaintiff,**

v.

**Elbert AUSTIN, et al., Defendants.**

**Civ. A. No. C 83–0326–P(J).**

United States District Court,
W.D. Kentucky.

Sept. 19, 1984.

Nicholas J. Harding of Western Kentucky Legal Services, Owensboro, Ky., and Amy Kuilema of Louisville Legal Aid Society, Inc., Louisville, Ky., for plaintiff.

Richard V. Beliles, Louisville, Ky., for defendants.

### MEMORANDUM OPINION

JOHNSTONE, District Judge.

Plaintiffs bring this action to enforce their rights under the Fourteenth Amendment pursuant to 42 U.S.C. § 1983, and under Titles XI–B and XIX of the Social Security Act and federal and state regulations adopted pursuant thereto. It is now before the court on plaintiffs' motion for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. By an order of this court entered May 24, 1984, this case stood submitted for partial summary judgment on July 2, 1984.

The defendants from the Kentucky Cabinet of Human Resources did not file a response. Defendant Paul Osborne from the Kentucky Peer Review Organization did file a response, but it substantially failed to answer most of the arguments presented by the plaintiffs.

Plaintiffs' motion is concerned solely with the validity of certain standard notices and procedures used by defendants to determine whether medicaid recipients in intermediate care facilities are eligible to continue receiving medicaid benefits. Any ruling on appropriate relief for plaintiffs shall be reserved for later negotiation between the parties or for settlement by the court.

Jurisdiction over this suit exists under 28 U.S.C. §§ 1331 and 1334.

Plaintiffs were certified as a class pursuant to Rule 23 of the Federal Rules. They are patients at intermediate care facilities in Kentucky who receive or have received Kentucky Medical Assistance Program benefits, and who are subject to having their benefits terminated by defendants. Defendants are Elbert Austin, Secretary of the Kentucky Cabinet for Human Resources (CHR), James Gooding, Director of the Medical Assistance Division of the CHR, and Paul Osborne, Executive Director of Kentucky Peer Review Organization (KPRO). The court finds that at all times pertinent to this law suit defendants acted under color of state law. This finding is not contested.

CHR is responsible for administering the Kentucky Medical Assistance Program which is a part of the federal medicaid program created by Title XIX of the Social Security Act, 42 USC §§ 1396 *et seq.* Medicaid provides medical assistance benefits to qualified patients in intermediate care facilities (ICF). An ICF provides services to people who need less care than that offered by a hospital or skilled nursing home but who do require some health care. 42 U.S.C. § 1396.

CHR must distribute medicaid benefits pursuant to a plan approved by the Secretary of Health, Education and Welfare. As a part of its plan it must have a system of hearings available to applicants and recipients who are dissatisfied with any action taken or not taken by CHR. 904 KAR 2:055 sets forth the methods by which Kentucky fulfills this hearing requirement. These regulations were promulgated pursuant to KRS 205.231 which states that any applicant dissatisfied with an action concerning his public assistance may appeal to a hearing officer. On receipt of such an appeal, the recipient "shall be given reasonable notice and opportunity for a hearing."

KPRO is a Professional Standards Review Organization. Such review organizations are required by federal statute. They review the services covered by medicaid and determine the necessity and appropriateness of the health care provided to medicaid recipients. 42 U.S.C. § 1320c. CHR has a contract with KPRO for KPRO to conduct the state's review of the health care needed by medicaid recipients in intermediate care facilities.

KPRO reviews the needs of patients receiving benefits periodically as provided in the contract and according to the requirements set forth in state law. *See* 904 KAR 2:055. If KPRO decides that the patient no longer requires the level of health care that he is receiving, it refers the case to a Physician Advisor who reviews the case and, if he agrees with the preliminary decision, sends an Adverse Determination Notice to the patient, the physician of record, the facility, and the CHR. If the patient is dissatisfied with the adverse determination, he is entitled to and may request a reconsideration of the determination by a committee composed of at least one physician. At the reconsideration proceeding the committee may consider the findings of the physician advisor, the complete patient record, any additional documentary information submitted by a party, and any oral presentations. The committee may admit any party to the proceedings at its discretion. If the Committee's decision upholds the adverse determination, the patient is sent a Committee Notification form informing him of that fact and his right to appeal to CHR where he has the right to receive an evidentiary hearing. His benefits are reduced or suspended pending a decision on appeal. If the appeal is in his favor his benefits are reinstated. This would include any benefits he should have received while he awaited an appeal. *See* 904 KAR 2:055 and KPRO Procedures Section 230 in Ap-

pendix to Plaintiffs' Motion for Summary Judgment.

Plaintiffs allege that the standard notice forms sent to intermediate care facility medicaid patients to inform them of an "Initial Determination" and of the committee's reconsideration decision do not comply with due process requirements. They also claim that the reconsideration procedure itself is constitutionally inadequate because recipients of benefits are entitled to a hearing *prior* to suspension of benefits, and the reconsideration is not a hearing. This court agrees.

■■■ Adequate notice and a hearing are clearly required before any individual is finally deprived of a property interest. *Mathews v. Eldridge,* 424 U.S. 319, 332, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976).

The threshold issue here then is whether plaintiffs have a property interest in the continued receipt of medicaid benefits. This court finds that they do.

In *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), the Court held that termination of welfare payments without a pretermination hearing was a denial of procedural due process. The Court reasoned that, "termination of aid pending resolution of a controversy over eligibility may deprive an *eligible* recipient of the very means by which to live while he waits." *Id.* at 267, 90 S.Ct. at 1020. Medicaid, like welfare, is based upon need. (Deposition of J. Gooding at 5). Moreover, the Supreme Court has indicated that direct financial medicaid benefits cannot be withdrawn without giving the patients notice and an opportunity for a hearing. See *O'Bannon v. Town Court Nursing Center,* 447 U.S. 773, 787, 100 S.Ct. 2467, 2476, 65 L.Ed.2d 506 (1980). Thus, it is apparent that the continued receipt of medicaid payments is a property interest protected by the Fifth Amendment.

Minimum due process required by the 5th Amendment was described in *Goldberg.* That decision held that due process principles "require that a recipient have timely and adequate notice detailing the reasons

for a proposed termination, and an effective opportunity to defend by confronting any adverse witness by presenting his own arguments and evidence orally." *Goldberg,* 397 U.S. at 267–68, 90 S.Ct. at 1020. These constitutional standards were explicitly incorporated in the federal regulations controlling state distribution of medicaid payments. 42 CFR 431.205(d).

At the time of any action which affects a medicaid recipient's claim, the agency must notify him:

(1) Of his right to a hearing,

(2) Of the method by which he may obtain a hearing

(3) That he may represent himself or use legal counsel ... or other spokesman. 42 CFR 431.206.

Notice of the adverse action must contain:

(a) A statement of what action the agency intends to take;

(b) The reasons for the intended action;

(c) The specific regulations that support ... the action; and,

(d) An explanation of ... the individual's right to request an evidentiary hearing if one is available, or a State agency hearing .... 42 CFR 431.-210.

■■ In light of the above described standards mandated by federal regulation and *Goldberg v. Kelly,* it is apparent that the notices procedures in this case do not comport with due process.

The Adverse Determination Notification consists of a form letter with blanks to be filled in by a Long Term Care Coordinator, an employee of KPRO. *See* KPRO Procedures Section 230 at 11. The coordinator is instructed to fill in the blank for "The reason for this determination is," with "Your care needs no longer meet the criteria for intermediate care," or "[a]ccording to information in your medical record you no longer require the care provided in an intermediate care facility." *Id.* at 230-6.

The Committee Notification form also contains no reference to the reasoning used by the committee or the regulations in-

volved. The notices of two plaintiffs contained only the general statements: "It is my decision, after due consideration of the medical data, that the adverse [decision] should be upheld," and "[f]urther stay at I.C.F. (intermediate care facility) not necessary [sic] P.C. (personal care) level is suggested to the family who objected to our decision." None of the defendants have alleged that these notices are atypical.

Neither of the standard notices contain specific reasons for the determination, nor do they contain specific regulations that support the action, both of which are required by the regulations. *See* 42 CFR 431.210. *Goldberg v. Kelly* specifically holds that due process requires "adequate notice *detailing* the reasons for a proposed termination." *Goldberg*, 397 U.S. at 267–68, 90 S.Ct. at 1020 (emphasis added).

The Sixth Circuit has ruled that there are four elements to adequate notice: a detailed statement of the intended action, the reason for the change in status, citation to the specific statutory section requiring reduction or termination, and specific notice of the recipient's right to appeal. *Garrett v. Puett*, 707 F.2d 930, 931 (6th Cir.1983).

The notices at issue here are deficient under these Sixth Circuit standards. They are exceedingly general and sparse in their statement of intended action, and their reasons given for change are boiler-plate. The coordinators are instructed to give one generic reason for each type of change—termination of benefits, change in care required, etc. In addition, there is no citation to statutes or regulations.

The purpose of notice is to "clarify what the charges are in a manner adequate to apprise the individual of the basis for the government's proposed action." *Wolff v. McDonnell*, 418 U.S. 539, 564, 94 S.Ct. 2963, 2978, 41 L.Ed.2d 935 (1974). The court is compelled to agree with the plaintiffs that the notice provided them is inadequate to allow them to prepare a defense to KPRO's decision that they no longer need care. Furthermore, the notices do not contain provisions specifically required by federal regulations and *Goldberg v. Kelly*.

Therefore, this court holds that the standard notices used by the Kentucky Peer Review Organization to notify plaintiffs of Initial Adverse Determination and Committee Consideration are insufficient to satisfy due process.

Next the court turns to plaintiffs' allegation that the Reconsideration proceeding does not comply with the due process standards enunciated in *Goldberg v. Kelly* and promulgated in the federal regulations.

In *Goldberg*, the Court held that welfare payments could not be discontinued without an evidentiary hearing. The hearing must be at a meaningful time and in a meaningful manner. *Goldberg*, 397 U.S. at 267, 90 S.Ct. at 1020. The *Goldberg* Court held that the recipient must be able to appear personally before the final decisionmaker, to present evidence orally, and to confront and cross-examine adverse witnesses. *Id.* Moreover, he must be permitted to retain counsel if he so desires. This would generally protect the interests of the recipient. *Id.* at 270, 90 S.Ct. at 1022. Finally, the decisionmaker's conclusion must rest solely on evidence adduced at the hearing. *Id.*

■ In addition to the requirements of *Goldberg*, state medicaid systems are required to have a hearing system to determine whether medicaid benefits should be denied, altered, or terminated. 42 CFR 431.25. The hearing system must meet the due process standards enunciated in *Goldberg* as well as any additional standards set forth in the Social Security Act or the regulations promulgated pursuant to that Act. 42 CFR 431.204(d).

The federal regulations provide that any patient who is dissatisfied with an action taken by the agency may request a hearing. 42 CFR 431.220. If a recipient requests a hearing, his services cannot be reduced or terminated by the agency until after the hearing. 42 CFR 431.230. Hearings must be at a reasonable time, date, and place, by one or more impartial officials or other individuals who have not been directly involved in the initial determi-

nation of the action. 42 CFR 431.240. The recipient must be given the right to examine his case file and all pertinent documents before and during the hearing, bring witnesses, establish facts, present an argument and question any evidence or testimony, "including the opportunity to confront and cross-examine adverse witnesses." 42 CFR 432.242.

It is clear to this court that the reconsideration proceeding used by KPRO is not a hearing as that term is defined in *Goldberg* and the federal regulations.

Defendant Osborne conceded that the reconsideration is not a hearing. *Deposition of P. Osborne* at 94–95. *See also Deposition of J. Rogers* at 114. It is simply a discussion between the parties involved in the original decision. *Osborne* at 94. No rules of evidence are applied, *Osborne* at 94; *Rogers* at 114, and the testimony is not taken under oath. *Rogers* at 113. There is no record of the proceeding other than minutes kept by the secretary and the decisionmaker can consult evidence other than that adduced at trial in making his conclusions. *Osborne* at 94–95. Thus, the decision does not rest solely on the evidence adduced at the hearing as is required by due process. *See Goldberg,* 397 U.S. at 271, 90 S.Ct. at 1022. There is no subpoena procedure whereby plaintiffs can compel witnesses to appear. *Rogers* at 113–14. Moreover, parties may be admitted separately into the proceedings to make an oral presentation *at the Committee's discretion. See* KPRO Procedures Section 230. Thus, there apparently is no right to confront and cross examine adverse witnesses, which is required by *Goldberg* and the federal regulations. *Id.* Finally, there is nothing in the record to indicate that patients are informed of their right to have counsel present or that patients are permitted the opportunity to review prior to and during trial the evidence that has been compiled against them. *See* KPRO Procedures and *Depositions of Osborne and Rogers.*

For these reasons this court cannot reconcile Kentucky's practice of suspending medicaid recipients' benefits pending an appeal of reconsideration whether or not the state reinstates those benefits after an evidentiary hearing on appeal.

It is clear to the court that the Fifth Amendment, *Goldberg v. Kelly,* and the federal regulations require a hearing before benefits are suspended. It is equally as clear that a reconsideration is not a hearing as it has been defined by statutory and case law. Therefore, we hold that under the Constitution and under the federal regulations the reconsideration procedure is an inadequate method of suspending medicaid benefits.

As was set out above, this order concerns only the validity of the notices and procedures involved in this case. Any ruling on the relief appropriate to remedy the invalidity of these practices is reserved for later negotiation and settlement by the parties and, if necessary, the court.

An appropriate order shall accompany this memorandum opinion.