Cluster DANIELS, et al.

v.

Fredia WADLEY, et al.

No. 3:79–3107–NA–CV.

United States District Court,
M.D. Tennessee,
Nashville Division.

May 15, 1996.

Lenny Lee Croce, Martha Rose Lionberger, Legal Services of TN, Oak Ridge, TN, for plaintiffs.

Jennifer Helton Small, Office of the Attorney General, Nashville, TN, for defendants.

### *MEMORANDUM*

JOHN T. NIXON, Chief Judge.

At issue in the above-styled action are (1) Plaintiffs' Motion to Modify Second Consent Decree and/or for Further Relief (Doc. No. 323); (2) Plaintiffs' Motion for Further Injunctive Relief (Doc. No. 325); (3) Plaintiffs' Motion to Investigate the Defendants' Apparent Contempt of Court (Doc. No. 326); (4) Plaintiffs' Request for Opportunity to Reply to Defendants' Responses Including Proposed Modifications and Regulations (Doc. No. 339); and (5) Plaintiffs' Renewed Motion to Investigate the Defendants' Apparent Contempt of Court (Doc. No. 363).

## I. Background

The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (1988), which confers original jurisdiction over all civil suits arising under the Constitution or laws of the United States, and 28 U.S.C. §§ 1343(a)(3) and (4), which provide for original jurisdiction in this court for suits authorized by 42 U.S.C. § 1983 to redress the deprivation under color of state law of any rights, privileges, and immunities guaranteed by the Constitution of the United States or by acts of Congress.

This case is the continuation of a class action started in 1979 regarding the provision of medical assistance under Tennessee's pre–1994 Medicaid program. Plaintiffs in the current action are Medicaid-eligible enrollees of the Tennessee Medicaid Demonstration

Project Number 11–C–99638/4–03 ("Tenn-Care").[1]

Plaintiffs seek to modify the Second Consent Decree in this action, which this Court entered on September 2, 1992 (Doc. No. 278), in order to prevent the denial, delay, reduction, suspension or termination of medical assistance or other adverse action to enrollees without due process and a timely fair hearing in accordance with Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.* (the "Medicaid Act"), the conditions imposed under TennCare, and the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the United States Constitution.

Defendants agree that the Second Consent Decree should be modified as a result of changes to Tennessee's Medicaid Program, which took effect as of January 1, 1994, when Tennessee implemented TennCare. Defendants assert, however, that Plaintiffs' proposed modifications are inappropriate. Defendants propose their own modifications and Plaintiffs object to Defendants' proposal.

The parties agree that Defendants have not received waivers from the U.S. Department of Health and Human Services ("HHS"), which oversees the TennCare program, regarding any of Defendants' obligations to provide for review of coverage disputes outlined in 42 U.S.C. § 1396a(a)(3), 42 C.F.R. § 431.205 and *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).[2]

For the reasons discussed below, the Court concludes that the existing TennCare hearing procedures violate the Medicaid Act and the Due Process Clause of the Fourteenth Amendment. Accordingly, the Court orders Defendants to submit proposed modifications to the Second Consent Decree within ninety days.

## II. Analysis

### A. The Appropriateness of Modifying the Proposed Consent Decree

Under TennCare, Tennessee's current program for providing health care to Medicaid eligible individuals, Managed Care Organizations ("MCOs") have financial incentives to deny enrollees health care even when such health care is medically appropriate. These incentives arise out of significant changes to Tennessee's Medicaid Program, which took effect with the inception of TennCare. Based on these changes, the Court finds that it is appropriate to modify the Second Consent Decree. *Rufo v. Inmates of Suffolk County Jail,* 502 U.S. 367, 393–95, 112 S.Ct. 748, 765, 116 L.Ed.2d 867 (1992).

The Tennessee Medicaid program in place at the time that the Second Consent Decree was negotiated permitted a recipient to choose his or her provider. The program required providers, for the most part, to directly bill the state for services rendered. Recipients could be denied medical assistance if a particular provider refused to accept the recipient's Medicaid card or otherwise refused to participate in the Medicaid program.[3] In such circumstances the recipient simply went to another provider to obtain services. Once the recipient located a provider willing to accept Medicaid, the service was provided, and the provider billed Medicaid for payment.

If the Medicaid Bureau denied a provider's claim for payment, the provider could sometimes directly bill the recipient. A Medicaid recipient could be directly billed if the recipient was ineligible at the time that the service was provided, if the service was not covered, or if limits for a particular service had been exceeded. If payment was denied due to provider error, the provider was prohibited

---

1. These are the Plaintiffs whom the Court recognizes in this action. They were the original parties in the action and are the individuals with respect to whom the requirements of the Medicaid Act are relevant.

2. *See* Defendants' Proposed Modifications to Second Consent Decree, filed June 5, 1995; Letter from George J. Schieber, Director of the Department of Health and Human Services, to Russell

White, Commissioner of the Tennessee Department of Health, notifying him that HHS does not recognize waivers by implication, Doc. No. 324, Appendix 2.

3. A recipient could also be denied assistance if the Bureau of Medicaid denied a provider's request for approval of service or if the Bureau discontinued a previously approved service.

from seeking any payment from the recipient.

In many situations prior authorization for medical care was not required under the Tennessee Medicaid program. Where prior authorization was required, the Medicaid Act permitted the recipient to request a fair hearing, comporting with the requirements set forth in *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), 42 C.F.R. § 431.205(d), to appeal a denial of authorization. The Medicaid Act required that such hearings take place before an impartial hearing officer. § 431.240(a)(3). The Medicaid Act required that the coverage dispute be resolved within ninety days of the recipient's request for a hearing. § 431.244(f). In many circumstances, the Medicaid Act mandated that services to the recipient continue until the coverage dispute was resolved through a fair hearing. § 431.230(a).

The system for providing health care to Medicaid eligible citizens and resolving coverage disputes is different under TennCare than under Tennessee's pre–1994 Medicaid program. Under TennCare enrollees are not free to choose their own providers. To obtain services from specialists, enrollees must obtain a referral from their primary care physician who is under contract with an MCO. TennCare forms contracts with MCOs to pay for enrollees' health care. MCOs receive a flat fee for each enrollee that the MCO covers. MCOs make a profit to the extent that their total income in flat fees exceeds the amount that the MCO pays to doctors and hospitals for treating sick enrollees. In order to prevent enrollees from receiving "too much" care, which would hurt an MCOs profit margin, MCOs screen enrollee care requests through primary care physicians with whom the MCOs have contracts. Through the use of these physician-employees, MCOs determine which care requests to authorize and which to deny.

Under TennCare if an enrollee wishes to appeal an adverse coverage decision, the enrollee does not have immediate access to an impartial decision maker. An enrollee's claim is not heard before an administrative judge or hearing officer, as defined by T.C.A.

§ 4–5–102, until after the enrollee has waded through several stages of preliminary review. Tenn.Admin.Reg. § 1200–13–12–.11. The entire appeals process may take more than ninety days. *Id.* And services do not continue pending resolution of the coverage dispute by an impartial decision maker. *Id.*

The Court finds that because of the pecuniary incentives that MCOs have for denying, suspending, or terminating care under the TennCare system, and because of other differences between Tennessee's pre–1994 Medicaid program and TennCare, TennCare enrollees need strong due process protections to protect themselves from inappropriate denials of health care. For these reasons the Court finds that it is appropriate to modify the Second Consent Decree.

**B. The Grievance Procedure Under the TennCare Program**

Under the TennCare program, if an enrollee is denied requested care, the enrollee may appeal that decision through an appeals process. The appeals process currently in place is designed to address three categories of appeals: (1) appeals of adverse decisions regarding applications, premiums, and disenrollment; (2) appeals of decisions to deny, reduce, or terminate services; and (3) appeals of decisions to deny medically necessary services.

**1. Appeal of a Decision Regarding Applications, Premiums, or Disenrollment**

■ If an MCO issues an unfavorable decision regarding an enrollee's enrollment status or premium level, the enrollee or prospective enrollee has thirty days to request administrative review by the TennCare Enrollee Review Unit. The Enrollee Review Unit may request additional information and the enrollee has thirty days in which to supply the information. After the enrollee responds, the Enrollee Review Unit issues a decision. If the enrollee disagrees with the decision, the enrollee may, within thirty days, request a hearing before the Commissioner of the Tennessee Department of Finance and Administration. If the matter involves an amount in controversy of less than $500,

there will be an informal hearing. Otherwise there will be a formal hearing. Either variety of hearing will be presided over by an administrative judge or a hearing officer.[4]

## 2. Appeal of Decisions to Deny, Reduce, or Terminate Services.

If an MCO denies, reduces, or terminates an enrollee's coverage, the enrollee may request, within thirty days, that the MCO review the decision. The MCO then has thirty days to reconsider the decision. If the enrollee is not satisfied with the outcome of the MCO's review, the enrollee may, within thirty days, request a review by the Medical Review Unit, Bureau of TennCare ("MRU"). When the MRU receives the enrollee's request for review it must notify the MCO of the request. The MCO then has five working days to file information for use during the review. The MRU then must review the case and make a decision within fifteen working days. If the MRU issues a decision favorable to the enrollee, that decision is binding on the MCO. If the MRU issues an unfavorable decision, the enrollee may request a Medical Appeal, which can be a contested case hearing or an informal hearing, within thirty days of receiving written notice of the decision. If the amount in controversy is less than $500.00, the hearing will be informal. Most other disputes require full contested case hearings. Once the MRU has made a decision unfavorable to an enrollee, further appeals are conducted by an ALJ or a hearing officer.

## 3. Expedited Medical Review Procedures: Appeal of Decisions to Deny Medically Necessary Care.

If an MCO has denied an enrollee's request for care, the enrollee's physician may, with the enrollee's authorization, choose to request an expedited review of that decision. To obtain an expedited review, the enrollee's physician must notify the MCO that an expedited review is medically necessary.[5] The MCO must reconsider its decision within two working days of notification. If the MCO denies the request on review, the MCO must notify the physician in writing of the reason for the denial. Within two working days, the physician may request an expedited administrative review of the decision by the MRU. The MRU will request that the MCO, within five working days, provide any documents that the MCO wishes to submit in support of its decision. The MRU then must issue a written decision within two working days of receiving the documents from the MCO. If the decision is favorable to the enrollee, the decision is binding on the MCO. If it is not, the physician may request an expedited medical appeal, conducted by an ALJ or hearing officer, within two working days of receipt of the MRU's decision. Such a hearing will be held within ten working days, and a decision will be rendered within two working days.

4. An "administrative judge" ("ALJ") is an agency member, agency employee, or employee or official of the office of the secretary of state, licensed to practice law, and authorized by law to conduct contested case proceedings pursuant to T.C.A. § 4–5–301. T.C.A. § 4–5–102(1). A "hearing officer" is an agency member, agency employee, or employee or official of the office of the secretary of state, not licensed to practice law, and authorized by law to conduct a contested case proceeding pursuant to § 4–5–301. T.C.A. § 4–5–102(4).

The point at which an ALJ or hearing officer becomes involved in an adjudication is significant because under Tennessee law such adjudicators must be objective and impartial. T.C.A. § 4–5–303. The impartiality necessary to fairly resolve coverage disputes under the TennCare program might not be possible where the adjudicator has a pecuniary or employment interest in a given case, as would be the case where an MCO employee presided over a TennCare coverage dispute. Where an ALJ or hearing officer presides over a hearing, she or he may be removed on the grounds of bias. T.C.A. § 4–5–302. In the context of TennCare coverage disputes an adjudicator must be genuinely impartial. If an enrollee demonstrates that the adjudicator is biased, that is sufficient to warrant the substitution of that person by another adjudicator.

The Court notes that a hearing before an Article III judge would pose even less of a risk of partiality than a hearing before an ALJ or hearing officer, but given the speed with which disputes regarding health care coverage must be resolved in order to prevent harm to an enrollee, such hearings are not plausible.

5. Given that such physicians are effectively employed by the MCOs, the Court notes that they may receive pressure not to request expedited review.

### C. Plaintiffs' Capacity to Bring this Action

Defendants argue that Plaintiffs do not have the capacity to bring this action. The Court rejects this argument. The Court finds that *Ex parte Young,* 209 U.S. 123; 28 S.Ct. 441, 52 L.Ed. 714 (1908), enables Plaintiffs to bring their claims.

The Court also notes that the recent Supreme Court decision in *Seminole Tribe of Florida v. Florida,* 517 U.S. ——, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), does not prevent Plaintiffs from bringing this action. In *Seminole Tribe* the Supreme Court noted that *Ex parte Young* does not permit claims against state officers where Congress has created, within an allegedly violated statute, a means for remedying the alleged violation. *See Schweiker v. Chilicky,* 487 U.S. 412, 423, 108 S.Ct. 2460, 2467, 101 L.Ed.2d 370 (1988). In *Seminole Tribe* the Supreme Court noted that where Congress has provided such means of redress, Congress has indicated an intention to limit a state's potential liability to the relief that is available under the statute. *Id.* at —— – ——, 116 S.Ct. at 1132–33.

■ *Seminole Tribe* is distinguishable from the current action, however. In the current action Plaintiffs allege that state officials have failed to comply with fair hearing requirements imposed under the Medicaid Act. The Medicaid Act contains no provisions designed to resolve disputes of the nature presented here,[6] so there is no statute-based remedy to preempt Plaintiffs' claims. Accordingly, *Seminole Tribe* poses no barrier to this claim.

■ Furthermore, the case of *Wilder v. Virginia Hospital Association,* 496 U.S. 498, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990), affords Plaintiffs a private right of action to bring their statutory claims. The Medicaid Act does not expressly preclude resort to § 1983, nor does it create a remedial scheme that is sufficiently comprehensive to demonstrate congressional intent to preclude remedy of suits under § 1983.

### D. Plaintiffs' Claims Under the Medicaid Act

The Court finds that the TennCare process for appealing disputed coverage decisions fails to meet Medicaid Act requirements. TennCare violates the Medicaid Act for two reasons: (1) TennCare fails to provide predeprivation hearings in situations in which the Medicaid Act would require such hearings; (2) TennCare fails to provide for sufficiently rapid resolution of disputed claims.

■ First, under the Medicaid Act benefits may rarely, if ever, be terminated prior to a hearing. *See* §§ 431.230 and 431.231,[7] *see also Feld v. Berger,* 424 F.Supp. 1356, 1363 (S.D.N.Y.1976) (holding that New York State's decision to transfer Medicaid-receiving nursing home patients to a facility providing less care without first offering them a fair hearing violated federal regulations). TennCare, in contrast, fails to maintain an enrollee's benefits pending the resolution of a coverage dispute, even where the Medicaid Act would *continue* such benefits. Tenn.Admin.Reg. § 1200–13–12–.11. To this extent, TennCare violates the Medicaid Act.

Second, under TennCare, claim resolution takes too long. Under the Medicaid Act, the agency must take final administrative action within ninety days from the date that a hearing is requested. 42 C.F.R. § 431.244(f).

---

6. The language of 42 U.S.C. § 1395mm does not alter this conclusion.

7. The language of 42 C.F.R. § 431.230 provides as follows:
   (a) If the agency mails the 10–day or 5–day notice as required under § 431.211 or § 431.214 of this subpart, and the recipient requests a hearing before the date of action, the agency may not terminate or reduce services until a decision is rendered after the hearing unless—(1) It is determined at the hearing that the sole issue is one of Federal or State law or policy; and (2) The agency

promptly informs the recipient in writing that services are to be terminated or reduced pending the hearing decision.
   (b) If the agency's action is sustained by the hearing decision, the agency may initiate recovery procedures against the applicant or recipient to recoup the cost of any services furnished the recipient, to the extent they were furnished solely by reason of this section.
   This language suggests that under § 431.230 the agency may never terminate a Medicaid recipient's benefits prior to the completion of a fair hearing.

The current TennCare procedures appear to allow claims to languish longer than that before they are resolved. As discussed above, if an enrollee is the subject of an adverse health care decision, the enrollee must first file a "grievance" with the MCO. The MCO has 30 days to respond. Then the enrollee has another 30 days to request review by the MRU, and the review can take another 30 days. Before an enrollee ever has an impartial hearing, Defendants' procedure takes 90 days. § 1200–13–12–.11(5)(c).[8] An enrollee then has 30 days to request a formal hearing. An additional twenty or more days may lapse before the enrollee receives a decision. This means that an enrollee can be forced to wait for well over ninety days before a coverage dispute is resolved.

To the extent that a claim dispute remains unresolved for longer than ninety days from the time that the enrollee requests review of the dispute, the TennCare procedures violate the Medicaid Act.

### E. Plaintiffs' Constitutional Claims

Plaintiffs assert that Defendants, through the TennCare hearing process, violate Plaintiffs' Fourteenth Amendment rights to procedural due process. In order to determine the validity of this claim, the Court must consider whether the MCOs are state actors. For the following reasons, the Court concludes that the MCOs are state actors.

#### 1. State Action

■ The TennCare program is monitored and approved of by the United States government through HHS. Under the TennCare program there are extensive contacts between the state of Tennessee and private MCOs. Under TennCare, the state has effectively delegated to these MCOs Tennessee's duty to provide health care to poor and uninsurable citizens. State officials rely on the ability of MCOs to provide health care in a cost-effective manner to enable TennCare to function. For this reason, the state and

the MCOs have a symbiotic relationship similar to the symbiotic relationship in which the Supreme Court found state action in *Burton v. Wilmington Parking Authority,* 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961).

The case of *J.K. v. Dillenberg,* 836 F.Supp. 694, 698 (D.Ariz.1993), also supports a finding that the MCOs are state actors. Under TennCare MCOs are, in effect, "creatures of the sovereign will, conceived as vehicles for execution of evolving public policy [i.e., managed care] on the [health care needs] of the population." *J.K. v. Dillenberg,* 836 F.Supp. at 698. Each MCO is required to comply with all federal, state, and local laws, rules, regulations, and standards governing performance of duties under provider risk agreements. In particular, MCOs must comply with provisions of the Medicaid Act and regulations thereunder unless specifically exempted by the Secretary of HHS.

MCOs have the authority to deny, terminate, suspend, reduce or delay specific services. In essence, all medical assistance provided to Medicaid-eligible Tennessee residents is subject to approval by an MCO. MCOs effectively make any decision to deny, terminate, suspend, reduce or delay medical assistance on behalf of the state of Tennessee.

Ultimately the state of Tennessee has responsibility for administering Tennessee's Medicaid/TennCare program. 42 U.S.C. § 1396a(a)(5); 42 C.F.R. § 431.10(e). MCOs must follow rules and policies set by Tennessee and the federal government. Defendants remain responsible, as charged under the Medicaid Act, for ensuring enrollees' due process rights under TennCare and for actions by MCOs that infringe upon those rights. Based on this analysis the Court finds that Defendants are state actors.

#### 2. Do the Current TennCare Hearing/Grievance Procedures Meet the Requirements of Procedural Due Process?

■ As state actors, Defendants must comport with the Fourteenth Amendment's

---

8. The Court finds that a coverage dispute is not resolved, for the purposes of the Medicaid Acts' ninety day requirements, until after the dispute has been heard and resolved by an ALJ or hearing officer, as defined by T.C.A. § 4–5–102. *See* § 431.240(a)(3). It appears from the record that this does not occur until after the post-MRU review is concluded. § 1200–13–12–.11(5)(c).

procedural due process requirements. The Court concludes that Defendants violate these requirements in two ways under the current system: (1) TennCare fails to require predeprivation hearings in situations in which *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), would require them, namely in situations in which the Medicaid Act would require the continuation of benefits pending a hearing or resolution of a coverage dispute; (2) TennCare fails to require that such hearings be presided over by an impartial hearing officer.

This Court finds that *Goldberg v. Kelly* requires that enrollees receive a predeprivation hearing in those situations in which the Medicaid Act would require a predeprivation hearing. *See Moffitt v. Austin*, 600 F.Supp. 295, 297 (W.D.Ky.1984) (holding that Medicaid recipients have a property interest under *Goldberg* in the continued receipt of medicaid benefits.) TennCare fails to provide such process and thus the TennCare appeals process violates procedural due process requirements set forth under the Fourteenth Amendment.

In *Goldberg v. Kelly*, New York City residents receiving benefits through the federal program Aid to Families with Dependent Children or through New York State's Home Relief program brought suit challenging the adequacy of procedures for notice and hearing in connection with decisions to terminate aid. The Supreme Court held that procedural due process requires pretermination evidentiary hearings before public assistance payments to welfare recipients may be discontinued. *Goldberg*, 397 U.S. at 264, 90 S.Ct. at 1018. The Court also held that due process requires that such hearings provide recipients with an opportunity to appeal personally with or without counsel before an impartial decision maker and orally present evidence and confront adverse witnesses. *Id.* at 267–68, 90 S.Ct. at 1020.

The Supreme Court's reasoning in *Goldberg* is instructive in the current action. The *Goldberg* Court noted that welfare recipients are entitled to pre-deprivation process because of their extreme vulnerability in the face of wrongful benefit termination:

[T]here is one overpowering fact which controls here. By hypothesis, a welfare recipient is destitute, without funds or assets . . . Suffice it to say that to cut off a welfare recipient in the face of . . . 'brutal need' without a prior hearing of some sort is unconscionable, unless overwhelming considerations justify it. . . . Against the justified desire to protect public funds must be weighed the individual's overpowering need in this unique situation not to be wrongfully deprived of assistance . . . While the problem of additional expense must be kept in mind, it does not justify denying a hearing meeting the ordinary standards of due process.

*Goldberg*, 397 U.S. at 261, 90 S.Ct. at 1017.

Like the plaintiffs in *Goldberg*, the Plaintiffs in the current action, Medicaid-eligible TennCare enrollees, have limited financial resources. Moreover, they have no means other than Defendants' fastidious adherence to Medicaid requirements to ensure that they are not wrongfully denied their property interest in continued coverage. If Plaintiffs' health care benefits are wrongfully denied, they will likely be forced to forgo the contested medical treatment and could suffer substantial physical harm as a result. Several Plaintiffs in this action, and undoubtedly others like them, suffered harm due to denial of coverage during the protracted process of resolving coverage disputes.[9] Given the importance of prompt medical treatment, and Plaintiffs' lack of other alternatives, this is unacceptable. The potential damage to Plaintiffs in this situation is much worse than the potential damage to the state if the state continues providing benefits pending the completion of a hearing by an impartial adjudicator and then subsequently recoups the benefits if it prevails. *See Mathews v. Eldridge*, 424 U.S. 319, 334–35, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). Defendants violate the Fourteenth Amendment's procedural due process requirements when they deprive enrollees of benefits prior to a hearing in situations in which the Medicaid Act would require continuation of benefits pending a

9. *See supra* note 12.

fair hearing.[10]

Moreover, the Court finds that the hearing requirements, which must be met to comport with the Fourteenth Amendment, are not satisfied until an appeal is heard by an impartial adjudicator.[11] In *Goldberg* the Supreme Court notes that an impartial hearing officer is essential for a hearing to comport with the requirements of due process. *Goldberg,* 397 U.S. at 270–72, 90 S.Ct. at 1022; *see In re Murchison,* 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942 (1955); *Wong Yang Sung v. McGrath,* 339 U.S. 33, 70 S.Ct. 445, 94 L.Ed. 616 (1950); *Moffitt v. Austin,* 600 F.Supp. 295, 298 (W.D.Ky.1984).

■ Due process is not met when a claim dispute is resolved by an adjudicator who has a "direct, personal, substantial pecuniary interest" in the ruling against one party in the action. *Tumey v. State of Ohio,* 273 U.S. 510, 523, 47 S.Ct. 437, 441, 71 L.Ed. 749 (1927). *See Gibson v. Berryhill,* 411 U.S. 564, 578, 93 S.Ct. 1689, 1697, 36 L.Ed.2d 488 (1973). In the current action the MCOs have a direct and substantial pecuniary interest in denying or delaying costly services for which the MCOs must pay.

Accordingly, the Court finds that where the Medicaid Act requires a pre-termination hearing, procedural due process is not satisfied until the claim is resolved either (1) in favor of the enrollee by an MCO reviewer or (2) against the enrollee by an impartial adjudicator.

For these reasons the Court finds that the current TennCare hearing process violates the procedural due process requirements of the Constitution.

### F. Plaintiffs' Relief

■ The Court denies Plaintiffs' request for reimbursement of money that they have already paid to secure health care. The Court bases this decision on the principle of sovereign immunity. *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Such relief would not constitute permissible prospective relief. *See Kelley et al. v. Metropolitan County Board of Education of Nashville,* 836 F.2d 986, 990 (6th Cir.1987).

■ The Court finds that the facts of this action meet the standard for issuing an injunction. *NAACP v. Mansfield, Ohio,* 866 F.2d 162, 166 (6th Cir.1989); *International Resources v. New York Life Insurance,* 950 F.2d 294, 302 (6th Cir.1991), *cert. den.,* 504 U.S. 973, 112 S.Ct. 2941, 119 L.Ed.2d 565 (1992). The Court finds that Plaintiffs have a strong chance of success on the merits of this action. *See Feld v. Berger,* 424 F.Supp. 1356 (S.D.N.Y.1976). The Court finds that the Plaintiffs could suffer irreparable harm should they have to forgo medical care pending resolution of their coverage disputes.[12] The significance of the potential harm to enrollees outweighs the administrative burden to Defendants of revising the dispute resolution process. This is particularly true given that Defendants have already conceded that the dispute resolution process requires modification in light of the implementation of TennCare. Finally, the Court finds that the grant of a preliminary injunction is in the public interest. Accordingly, the Court enjoins Defendants from taking adverse health care action against Medicaid-eligible TennCare enrollees without first providing hearings before an impartial adjudicator where

---

**10.** The Court rejects the suggestion that Defendants should be allowed to terminate coverage pending resolution of a claim dispute with the stipulation that they reimburse an enrollee if the enrollee prevails at the hearing. Given that Medicaid-eligible enrollees lack financial resources, it is unrealistic to expect them to continue coverage on their own pending resolution of the coverage dispute.

**11.** *See* § 431.240(a)(3); T.C.A. § 4–5–102.

**12.** There are many examples of the harm that TennCare enrollees suffer when coverage is denied during a protracted dispute resolution pro-

cess. For example, during the course of H.B.'s coverage dispute, her condition deteriorated so much that she may now require a liver transplant as well as a small bowel transplant. H.G. suffered a stroke while contesting her MCO's denial of coverage for specialist care to clear arteries in her neck. M.T. suffered serious pain as a result of being denied coverage for pediatric oral surgery to cap her badly decayed teeth. As a result of this decay M.T. has had to ingest large quantities of antibiotics. Such scenarios are capable of repetition among TennCare's other Medicaid-eligible enrollees under the current TennCare dispute resolution process. ·

such hearings would be available under the Medicaid Act, § 431.230.

The Court orders Defendants to submit, within ninety days, proposed modifications to the Consent Decree. Such modifications shall provide enrollees with predeprivation process before an impartial decision maker where the Medicaid Act would provide it and shall provide for the resolution of coverage disputes within ninety days of an enrollees request for review.

### G. Plaintiffs' Motion to Investigate Contempt

The Court grants Plaintiffs' Motion to Investigate Contempt. The Court grants this motion with the stipulation that such discovery be limited to the proposed modifications and specific requirements of the Second Consent Decree.

### H. Plaintiffs' Request for Attorneys' Fees

The Court finds that Plaintiffs' are entitled to reasonable attorneys' fees. The Court orders Plaintiffs to submit within sixty days an itemization of fees and expenses. The Court may extend this time period for good cause shown.

### III. Conclusion

For the aforementioned reasons, the Court partially grants Plaintiffs' Motion to Modify the Second Consent Decree (Doc. No. 323) and partially grants Plaintiffs' Motion for Further Injunctive Relief (Doc. No. 325). The Court hereby declares the current Tenn-Care procedures for challenging adverse health care decisions to violate the Medicaid Act, 42 U.S.C. § 1396a(a)(3), 42 C.F.R. pt. 431, subpt. E, and the requirements of the Fourteenth Amendment's Due Process Clause. Accordingly, the Court orders Defendants to submit proposed modifications to the Consent Decree within ninety days. These proposed modifications shall include: (1) a mechanism for ensuring that all enrollees who would be entitled to predeprivation hearings under the Medicaid Act, 42 C.F.R. § 431.230, are entitled to a predeprivation hearing under TennCare; (2) a method for ensuring that such hearings are presided over by an impartial decision maker as described in T.C.A. § 4-5-102; and (3) a method for ensuring that health care disputes will be resolved within ninety days of an enrollee's request for review of an adverse care decision.

The Court determines that Plaintiffs' Motion to Investigate the Defendants' Apparent Contempt of Court (Doc. No. 326) is MOOT. The Court notes that Plaintiffs subsequently filed Plaintiffs' Renewed Motion to Investigate the Defendants' Apparent Contempt of Court (Doc. No. 363). This Motion supersedes Plaintiffs' earlier motion.

The Court GRANTS Plaintiffs' Renewed Motion to Investigate the Defendants' Apparent Contempt of Court (Doc. No. 363). The Court grants this motion but limits discovery to proposed modifications and specific requirements of the Second Consent Decree.

The Court concludes that Plaintiffs' Request for Opportunity to Reply to Defendants' Responses Including Proposed Modifications and Regulations (Doc. No. 339) is MOOT. The Court bases this decision on the Plaintiffs' subsequent filing, and the Court's acceptance, of Plaintiffs' Reply in Opposition to Defendants' Proposed Modifications and Regulations (Doc. No. 342).

The Court awards Plaintiffs their costs and reasonable attorney's fees.

### ORDER

The Court is in receipt of numerous motions in the above-styled action. For the reasons set forth in the contemporaneously entered Memorandum, the Court hereby PARTIALLY GRANTS Plaintiffs' Motion to Modify Second Consent decree and for Further Relief (Doc. No. 323) and PARTIALLY GRANTS Plaintiffs' Motion for Further Injunctive Relief (Doc. No. 325). Defendants shall submit, within ninety days, proposed modifications to the Consent Decree, which will comport with the requirements set forth in the contemporaneously entered memorandum. In the meantime, the Court enjoins Defendants' from denying benefits to any Medicaid-eligible TennCare enrollee prior to a hearing conducted by an impartial adjudicator where the Medicaid Act would provide

for such a hearing. The Court also enjoins Defendants from permitting coverage disputes to continue unresolved for over ninety days after an enrollee's request for review of an adverse decision.

The Court determines that Plaintiffs' Motion to Investigate the Defendants' Apparent Contempt of Court (Doc. No. 326) is MOOT. The Court notes that Plaintiffs subsequently filed Plaintiffs' Renewed Motion to Investigate the Defendants' Apparent Contempt of Court (Doc. No. 363). This Motion supersedes Plaintiffs' earlier motion.

The Court GRANTS Plaintiffs' Renewed Motion to Investigate the Defendants' Apparent Contempt of Court (Doc. No. 363). The Court grants this motion but limits discovery to proposed modifications and specific requirements of the Daniels Second Consent Decree.

The Court concludes that Plaintiffs' Request for Opportunity to Reply to Defendants' Responses Including Proposed Modifications and Regulations ·(Doc. No. 339) is MOOT. The Court bases this decision on the Plaintiffs' subsequent filing, and the Court's acceptance, of Plaintiffs' Reply in Opposition to Defendants' Proposed Modifications and Regulations (Doc. No. 342).

The Court awards plaintiffs their costs and reasonable attorney's fees.